IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RICHARD DEE WOODS, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-3704 |
| | § | |
| LORIE DAVIS, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM OPINION AND ORDER**

Petitioner, a state inmate proceeding *pro se*, filed this section 2254 habeas lawsuit challenging his conviction. Respondent filed a motion for summary judgment. (Docket Entry No. 13.) Despite expiration of a reasonable period of time in excess of ninety days, including an extension of time granted at his request, petitioner failed to file a response to the motion, and the motion is uncontested.

Having considered the motion, the pleadings, the record, and the applicable law, the Court GRANTS the motion for summary judgment and DISMISSES this lawsuit for the reasons explained below.

*Background and Claims*

Petitioner was convicted of possession with intent to deliver/manufacture a controlled substance, as enhanced, and sentenced to ninety-nine years' imprisonment. The conviction was affirmed on appeal, *Woods v. State*, 2016 WL 4040120, No. 09-15-00013-CR (Tex. App.–Beaumont 2016, pet. ref'd.), and the Texas Court of

Criminal Appeals refused discretionary review. The Texas Court of Criminal Appeals denied petitioner's timely-filed application for state habeas relief.

Petitioner raises the following grounds for federal habeas relief in this proceeding:

1. There was insufficient evidence to convict him of possession with intent to deliver a controlled substance;

2. There was insufficient evidence to affirmatively link him to the methamphetamine that the police found in the truck he was driving;

3. Trial counsel was ineffective in failing to interview his co-defendant or call the co-defendant to testify that the drugs belonged to him, not petitioner;

4. Appellate counsel was ineffective in failing to challenge the trial court's denial of petitioner's motion to suppress.

Respondent argues that petitioner's claims should be summarily dismissed as they have no merit.

## *The Applicable Legal Standards*

*Habeas Review*

This petition is governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2254. Under the AEDPA, federal habeas relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Harrington v. Richter*, 562 U.S. 86, 98–99 (2011); *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule

that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from such a decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7-8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id.* at 411. "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102. As stated by the Supreme Court in *Richter*,

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.

*Id.*, at 102-03 (emphasis added; internal citations omitted).

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively

unreasonable in light of the evidence presented in the state court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller-El*, 537 U.S. at 330–31.

*Summary Judgment Review*

In deciding a motion for summary judgment, the district court must determine whether the pleadings, discovery materials, and the summary judgment evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

While summary judgment rules apply with equal force in a section 2254 proceeding, the rules only apply to the extent that they do not conflict with the federal rules governing habeas proceedings. Therefore, section 2254(e)(1), which mandates that a state court's findings are to be presumed correct, overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmovant. Accordingly, unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, the state court's findings must be accepted as correct by

the federal habeas court. *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

## *Insufficiency of the Evidence*

Petitioner argues in his first habeas claim that the evidence was insufficient to support his conviction of possession with intent to deliver a controlled substance. He argues in his second claim that the evidence was insufficient to affirmatively link him to the methamphetamine found in the truck he was driving. As these two claims involve the same evidence, they will be addressed as one.

A challenge to the sufficiency of the evidence raised in a section 2254 habeas petition is governed by *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979), which reflects the federal constitutional due process standard. *Jackson* requires that a reviewing court determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original). This inquiry is highly deferential to the jury's verdict. *See United States v. Harris*, 293 F.3d 863, 869 (5th Cir. 2002); *United States v. Duncan*, 919 F.2d 981, 990 (5th Cir. 1990). The AEDPA standard of review augments the *Jackson* analysis, creating a doubly deferential barrier to federal habeas relief. *See Coleman v. Jackson*, 566 U.S. 650, 651 (2012); *Perez v. Cain*, 529 F.3d 588, 599 (5th Cir. 2008). The reviewing court is to determine only whether the state court's assessment of the *Jackson* standard was unreasonable. See 28 U.S.C. § 2254(d)(1).

Petitioner challenged the sufficiency of the evidence on direct appeal. The intermediate state court of appeals found the evidence sufficient under the standards imposed by *Jackson*, and held as follows:

> Woods contends the evidence does not support the jury's conclusion that he possessed the methamphetamine police found in the truck he was driving when he was stopped. Specifically, Woods argues that reasonable doubt exists as to his guilt because: (1) the evidence did not show he owned the truck where the drugs were found; (2) the evidence established the front-seat passenger, who owned the truck, told police that the methamphetamine in the truck belonged to him, not Woods; (3) the police found the methamphetamine in a bag located within a hidden compartment in the truck's center console; and (4) Woods claims he did not know the compartment existed or that methamphetamine had been hidden there.
>
> Under the Texas Controlled Substances Act, "possession" means actual care, custody, control, or management. TEX. HEALTH & SAFETY CODE ANN. § 481.002(38). "Possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control." TEX. PENAL CODE ANN. § 6.01(b). Generally, a person's mere presence at a location where the police find drugs is alone, not enough, to establish that the defendant actually exercised care, custody, or control of the drugs. However, presence or proximity may be sufficient to establish possession when that circumstance, combined with other circumstantial or direct evidence linking the defendant to the controlled substance, proves that the defendant, beyond reasonable doubt, was in possession of the contraband.
>
> The methamphetamine that Woods was charged with possessing was found in a neoprene bag. The neoprene bag was found in a hidden compartment in the center console of the truck that Woods was driving when he was stopped. It is undisputed that the truck Woods was driving belonged to the front-seat passenger. To prove that he possessed the contraband, the State was required to prove that Woods exercised care, custody, or control over the contraband, and that when Woods was stopped, he was aware that the methamphetamine was in the truck. Generally, when a defendant is found with others in a vehicle containing contraband, the State is required to satisfy the affirmative links rule to prove that the defendant possessed the drugs found in the vehicle. The affirmative links rule is a rule that is designed to protect innocent bystanders from being convicted of possession based solely

on their proximity to illegal drugs belonging to others. Under the affirmative links rule, the State must prove that independent facts and circumstances exist sufficient to allow the jury to reasonably link the defendant to the contraband; these independent facts must show the defendant was connected to the drugs beyond the fact that he was near them. Under the affirmative links rule, the logical force of other independent links, when combined with defendant's proximity to the contraband, may establish, beyond reasonable doubt, that the defendant exercised actual care, custody, or control over the contraband.

Four witnesses testified during the guilt-innocence phase of Woods' trial, but only two of the witnesses, a narcotics investigator and deputy, both of whom were employed by one of the constables in Montgomery County, provided the testimony linking Woods to the methamphetamine in the truck. The narcotics investigator, who was involved in the investigation that led to Woods' arrest, testified that on the day Woods was arrested, he was on the lookout for a truck like the one he saw Woods driving. According to the investigator, he was looking for a truck like the one Woods was in based on a tip from a confidential informant. From the information the investigator received from his informant, he was expecting a truck like the one Woods was in to pass through Montgomery County on its way to Houston, where the individuals in the truck were expected to stop and obtain methamphetamine. The investigator explained that on the day that Woods was arrested, he saw Woods and his two companions in the truck he was looking for at a fast-food restaurant in Montgomery County. After spotting the truck, the investigator indicated that he followed it in his unmarked car into Harris County. However, the investigator stated that he quit following the truck because he thought the occupants had spotted him. The investigator explained that he pulled his unmarked car into a parking lot, located near the highway, where he could not be seen while watching traffic on the highway. While watching traffic, the investigator noticed the truck Woods was driving leave the parking lot. He followed in his unmarked car as the truck entered the highway. According to the investigator, as he followed the truck, he saw Woods violate several traffic laws. Based on these violations, the investigator asked a deputy constable, who was assisting him in a separate marked vehicle, to stop the truck.

Subsequently, after Woods' truck was stopped and searched by the deputy constable, Woods and his two companions were taken to the police station where they were questioned by the investigator. According to the investigator, the front-seat passenger admitted owning the drugs found in the hidden compartment in the center console of the truck. The front-seat

7

passenger also told the investigator that Woods and a female passenger, travelling [*sic*] in the truck's back seat, were not involved with the drugs.

Based on its verdict, the jury rejected the view that Woods had no involvement with the methamphetamine. In deciding the case, the jury was entitled to disbelieve the front-seat passenger's statement that Woods was not involved and rely on the circumstantial evidence, which does link Woods to the drugs.

Based on the evidence before the jury, a number of factors link Woods to the drugs that were found in the truck. There was evidence before the jury allowing the jury to conclude that Woods, before being stopped, was aware the purpose of the trip was to purchase drugs. At the station, Woods told the investigator that he had stopped in Cleveland before going to Houston to meet a person named Jay. According to the investigator's testimony, Jay is a person known to be involved with narcotics. Also, in Woods' interview with the investigator, Woods told him that the group was travelling [*sic*] to Houston to meet a person named Frank. According to the investigator's testimony, the investigator knew Frank to be a narcotics dealer. During his interview, Woods also told the investigator that after taking the truck to Houston, he was the only person in the truck who went into Frank's home. During the trial, the investigator testified that based on his knowledge about Frank, the narcotics that police found in the console of the truck "came from Frank's."

The testimony of the deputy constable that stopped and searched the truck established that the methamphetamine was found in the truck's center console, that the drugs could not have been easily put inside the console without all of the occupants of the truck having known they were there, and that the drug paraphernalia, like that sold by the headshop in the parking lot where the investigator saw the truck, was on the passenger floorboard in the truck. This testimony provided the jury with additional circumstantial evidence independent of Woods' presence in the truck establishing the purpose of the group's trip into Houston and tying Woods to the methamphetamine that police found in the truck. We conclude that several independent affirmative links were established in the trial that enabled the jury to rationally find, beyond reasonable doubt, that Woods possessed the methamphetamine found in the truck.

The statement Woods gave in his interview to the investigator, viewed in the light most favorable to the verdict, allowed the jury to conclude that Woods was aware the purpose of the trip was to purchase drugs. The statement

8

> Woods gave the investigator also allowed the jury to infer, in light of all of the evidence, that Woods received the methamphetamine while in Frank's home. Additionally, there was evidence at trial showing that drug paraphernalia, like that sold in a headshop near the parking lot where the investigator saw the truck exit, was found on the truck's floorboard after it was stopped. The presence of the drug paraphernalia, in open view of the truck's occupants, offers an additional affirmative link showing that Woods was aware that drugs were in the truck. Finally, while Woods denied having purchased any drugs in the statement that he made to the investigator after his arrest, Woods acknowledged to the investigator that he had "facilitated that deal."
>
> In this case, Woods does not challenge the validity of the search of the truck. Here, in addition to Woods' proximity to the contraband, the circumstances affirmatively linked Woods to the drugs. In our opinion, the cumulative force of the evidence, when viewed as a whole, and in the light most favorable to the jury's verdict, allowed the jury to find that Woods obtained, received, or was aware the contraband was in the truck before he was stopped. We overrule Woods' sole issue and affirm the trial court's judgment.

*Woods*, at 1–3 (citations, quotations omitted).

Viewing all of the evidence under the standards for federal habeas review, the Court finds that petitioner has not met his burden of proof under AEDPA. The state court analyzed the evidence under *Jackson*, and this Court finds no fault with that analysis. In disagreeing with the state court's analysis and disposition, petitioner does nothing more in this proceeding than identify the trial evidence that supported his innocence. This is insufficient to warrant habeas relief, as petitioner fails to show that the state court's assessment under the *Jackson* standard was unreasonable. Habeas relief is unwarranted.

Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law or was an unreasonable determination

9

of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

## Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance. *Id.* at 687. The failure to demonstrate deficient performance or prejudice is fatal to a *Strickland* claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant

setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland*, 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled. *Id.*

The Supreme Court recently emphasized in *Richter* the manner in which a federal court is to consider an ineffective assistance of counsel claim raised in a habeas petition subject to AEDPA's limitations:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

562 U.S. at 101 (internal quotation omitted).

In the context of reviewing claims of ineffective assistance, the Supreme Court and Fifth Circuit have directed federal habeas courts to exercise great caution to avoid the

11

distorting effects of hindsight. *See Premo v. Moore*, 562 U.S. 115 (2011) ("In determining how searching and exacting their review must be, habeas courts must respect their limited role in determining whether there was manifest deficiency in light of information then available to counsel."); *Bell v. Cone*, 535 U.S. 685, 698 (2002) (confirming that judicial scrutiny of a counsel's performance must be highly deferential and that every effort must be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time). These same standards apply to claims against trial counsel and appellate counsel alike.

*Trial Counsel*

Petitioner claims that trial counsel was ineffective in failing to interview his co-defendant Pennington or call Pennington to testify that the drugs belonged to him and not to petitioner. In responding to this claim on collateral review, trial counsel submitted the following affidavit testimony:

> No I did not consider calling Mr. Bradley Pennington as a witness in the case for several reasons, the most important of which is he, as a co-defendant in the case, was already indicted for this case and was represented by counsel. There was absolutely no benefit for him to testify for Mr. Woods while his case was still pending because that would affect his plea bargain chances later. Also, no lawyer would allow his client to testify for the benefit of a co-defendant while his client's case is still pending to HELP the co-defendant. In addition Mr. Pennington he had already admitted to the police that Mr. Woods was the actual purchaser during his interview and that Mr. Woods went in Frank's home to buy the drugs. That type of testimony would have [corroborated] the State's theory as to who purchased the drugs. None of that testimony would have helped Mr. Wood's case in any way since it tends to affirmatively link him to the crime. If Mr. Pennington had testified to that, the State would have been able to

> impeach him on his prior statement to them of Mr. Wood's involvement. If that would have happened it would have appeared as though we were trying to present perjured testimony which would not have helped Mr. Woods either.

*Ex parte Woods*, at 64.

In rejecting petitioner's claim of ineffective assistance of trial counsel, the trial court on collateral review made the following relevant findings of fact:

> 5. The Court is familiar with the performance of the applicant's trial attorney, [W.S.], who has long practiced in the courts of Montgomery County and is well qualified for appointment as trial counsel in criminal cases.
>
> 6. [W.S.] has submitted a credible affidavit in answer to the applicant's claims of deficient performance.
>
> 7. [W.S] made a reasonable, strategic decision not to call the applicant's associate, Brad Pennington, as a witness because he believed Pennington's testimony would be damaging to the applicant's case.

*Ex parte Woods*, at 77. The trial court also made the following relevant conclusion of law:

> 2. The applicant has failed to prove by a preponderance of the evidence that he was denied his right to the effective assistance of counsel.

*Id.* (citation omitted). The Texas Court of Criminal Appeals relied on the findings of fact and conclusions of law in denying habeas relief. *Id.*, at cover.

To establish ineffective assistance of trial counsel, petitioner must establish deficient performance and prejudice. In this instance, petitioner must establish in the record that, had trial counsel interviewed Pennington and called him to testify, there is a reasonable probability that the result of the trial would have been different. The trial court on collateral review found that counsel's affidavit testimony was credible, and that counsel

13

made a strategic decision not to call Pennington as a witness because he believed the testimony would have damaged petitioner's case. Petitioner fails to show that this was an unreasonable trial strategy under the circumstances of his case, and no deficient performance is shown. Petitioner's conclusory assertions of ineffective assistance are insufficient to meet his burden of proof under AEDPA, and habeas relief is unwarranted.

Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of these claims.

*Appellate Counsel*

Petitioner next claims that appellate counsel was ineffective in failing to challenge the trial court's denial of petitioner's motion to suppress the drugs police found in the truck. He argues that the trial court should have suppressed the evidence because it was found during an unlawful and warrantless traffic stop. According to petitioner, had appellate counsel raised the issue on appeal, he would have prevailed on appeal.

A pretrial hearing was held on petitioner's motion to suppress. (Docket Entry No. 14-14, pp. 105-123.) Montgomery County Precinct 4 investigator Josh Bergland testified to stopping petitioner's truck after observing it change lanes without signaling. Petitioner was driving the truck, and was unable to produce a valid driver's license. Petitioner acknowledged in his written motion to suppress that Pennington, who owned the truck, consented to the police officer's search of the vehicle. (Docket Entry No. 14-11, p. 90.)

The drugs were found in a hidden center console divider. *Id.* Petitioner argued that the stop was illegal, but the trial court disagreed and denied the motion to suppress. *Id.*, p. 103.[1]

In rejecting petitioner's claim against appellate counsel, the state court on collateral review made the following relevant finding of fact:

> 8. The applicant committed at least one traffic violation prior to being stopped by officers, including changing lanes without signaling and driving with an invalid license.

*Ex parte Woods*, at 77. The state court also made the following relevant conclusions of law:

> 3. Officers had reasonable suspicion to detain the applicant.
>
> 4. The outcome of the applicant's appeal would not have been different had his appellate attorney challenged this Court's ruling on the applicant's motion to suppress.
>
> 5. The applicant has failed to prove by a preponderance of the evidence that he was denied his right to the effective assistance of appellate counsel.

*Id.*, at 77-78 (citations omitted). The Texas Court of Criminal Appeals relied on the findings of fact and conclusions of law in denying habeas relief. *Id.*, at cover.

Petitioner argues here that the traffic stop was unlawful and that the officers unlawfully seized the drugs without a warrant. The trial court, during trial and on collateral review, expressly found that petitioner had violated at least one traffic law and that the officers had reasonable suspicion to detain him. Petitioner's allegations of an

---

[1] The trial court granted petitioner's motion to suppress the warrantless search of his cell phone. *Id.*, p. 103.

15

unlawful stop are conclusory, have no support in the record or in the law, and are insufficient to raise a constitutional issue. See *Green v. Johnson*, 160 F.3d 1029, 1037, 1042 (5th Cir. 1998). His claim of an unlawful traffic stop was groundless, and appellate counsel was not ineffective in failing to raise a groundless claim on appeal. *Id.*, at 1042. No habeas relief is merited.

Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of these claims.

### *Evidentiary Hearing*

Having reviewed the pleadings and the proceedings held in state court as reflected in the state court records, the Court finds that an evidentiary hearing is unnecessary.

### *Conclusion*

The motion for summary judgment (Docket Entry No. 13) is GRANTED and this habeas lawsuit is DISMISSED WITH PREJUDICE. Any and all pending motions are DENIED AS MOOT. A certificate of appealability is DENIED.

Signed at Houston, Texas on April 24, 2019.

Gray H. Miller
Senior United States District Judge